People v Farley (2018 NY Slip Op 06380)





People v Farley


2018 NY Slip Op 06380


Decided on September 28, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 28, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, LINDLEY, NEMOYER, AND TROUTMAN, JJ.


970 KA 17-00071

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
KENNETH FARLEY, DEFENDANT-APPELLANT. 






EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (WILLIAM T. EASTON OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Francis A. Affronti, J.), rendered March 11, 2014. The judgment convicted defendant, upon a jury verdict, of assault in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law and a new trial is granted.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of assault in the first degree (Penal Law § 120.10 [1]), defendant contends that Supreme Court erred in denying his challenge for cause to a prospective juror. We agree. We therefore reverse the judgment and grant defendant a new trial.
During jury selection, the prospective juror at issue (hereafter, juror) stated that she knew a potential witness, a trauma surgeon who treated the victim for knife wounds inflicted by defendant. The surgeon had been the juror's trauma surgeon two years earlier, and the juror was under the surgeon's care for 14 days. Throughout that period, the juror saw the surgeon at least once a day, but she had not seen him since then. The juror stated: "I do think that he did a very good job. He saved my life." The juror repeatedly asserted, however, that she would not let her personal feelings about the surgeon interfere with her ability to assess the evidence objectively and that she would afford both sides a fair trial. Defendant challenged the juror for cause based on her relationship with the surgeon, arguing that an assertion of impartiality cannot cure an implied bias. The court denied the challenge, reasoning that there was no implied bias because the juror insisted that she could be objective and return a verdict based on the evidence. Defendant then exercised his last peremptory challenge to excuse the juror.
A prospective juror may be challenged for cause on, inter alia, the ground that he or she has some relationship to a prospective witness at trial of a nature that "is likely to preclude [the prospective juror] from rendering an impartial verdict" (CPL 270.20 [1] [c]). Such a relationship gives rise to what is known as "an implied bias' . . . that requires automatic exclusion from jury service regardless of whether the prospective juror declares that the relationship will not affect her ability to be fair and impartial" (People v Furey, 18 NY3d 284, 287 [2011], citing People v Rentz, 67 NY2d 829, 831 [1986] and People v Branch, 46 NY2d 645, 650 [1979]), and "cannot be cured with an expurgatory oath" (id.). Not every potential juror-witness relationship necessitates disqualification, but courts are "advised . . . to exercise caution in these situations by leaning toward disqualifying a prospective juror of dubious impartiality' " (id., quoting Branch, 46 NY2d at 651). Relevant factors for the court to consider in determining whether disqualification is necessary include the nature of the relationship and the frequency of contact (see id.; People v Guldi, 152 AD3d 540, 542 [2d Dept 2017], lv denied 30 NY3d 1019 [2017]). The denial of a challenge for cause has been upheld where the relationship at issue arose in a professional context and "was distant in time and limited in nature" (People v Scott, 16 NY3d [*2]589, 595 [2011]; see People v Stanford, 130 AD3d 1306, 1308-1309 [3d Dept 2015], lv denied 26 NY3d 1043 [2015]). Conversely, the Court of Appeals has required disqualification where the relationship was "essentially professional" but "also somewhat intimate" (Rentz, 67 NY2d at 831).
We conclude that the juror's testimony indicated a likelihood that her relationship to the surgeon was of a nature that would preclude her from rendering an impartial verdict. The juror was in the hospital for an extended period of time suffering from an unspecified trauma. During that time, the surgeon was primarily responsible for the juror's care, and they had contact on at least a daily basis. Most significantly, the juror was convinced that the surgeon had saved her life. Thus, although the relationship arose in a professional context, it was, at least from the juror's perspective, something more than a mere professional relationship.
In light of the nature of the relationship and the frequency of the contact, we conclude that the court erred in denying the challenge for cause (see Furey, 18 NY3d at 287; Guldi, 152 AD3d at 542). The erroneous denial of a challenge for cause constitutes reversible error where, as here, the defendant exercised a peremptory challenge to excuse the prospective juror and exhausted his peremptory challenges prior to the completion of jury selection (see CPL 270.20 [2]; People v Cahill, 2 NY3d 14, 49-50 [2003]).
Defendant further contends that the court erred in refusing to charge assault in the second degree (Penal Law § 120.05 [4]) as a lesser included offense of assault in the first degree under Penal Law § 120.10 (1). Because we are granting defendant a new trial, we address that contention in the interest of judicial economy, and we reject it. We note that a person is guilty of assault in the second degree under that subdivision where he or she "recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument" (§ 120.05 [4]). Although it is theoretically impossible to commit assault in the first degree under section 120.10 (1) without at the same time committing assault in the second degree under section 120.05 (4) (see People v Green, 56 NY2d 427, 435 [1982], rearg denied 57 NY2d 775 [1982]; see generally CPL 1.20 [37]), we conclude that "there is no reasonable view of the evidence that would support a finding that defendant committed the lesser offense but not the greater" (People v Archibald, 148 AD3d 1794, 1795 [4th Dept 2017], lv denied 29 NY3d 1075 [2017]; see People v Wolff, 103 AD3d 1264, 1265 [4th Dept 2013], lv denied 21 NY3d 948 [2013]). Here, the surgeon testified that the victim suffered eight knife wounds, which included a "penetrat[ing]" wound to the front of the chest and two "significant" wounds to the side of the chest and the back. Furthermore, the surgeon testified that the victim lost a liter of blood, approximately one-fifth of his total blood supply, and that he would have died had he not received medical treatment. That evidence would have been inconsistent with a finding that defendant acted with mere recklessness (see People v Rivera, 23 NY3d 112, 124 [2014]; People v Lopez, 72 AD3d 593, 593 [1st Dept 2010], lv denied 15 NY3d 807 [2010]).
Entered: September 28, 2018
Mark W. Bennett
Clerk of the Court